**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 23 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KEVIN WHITESEL,

     Plaintiff-Appellant,

    v.

KELLY SENGENBERGER F/K/A KELLY CRONAN, JULIE STRANSKI, JUNE H. CANDELARIO, THE BOARD OF COUNTY COMMISSIONERS FOR JEFFERSON COUNTY, COLORADO, NELSON NADEAU, BRENDA BOUCHARD, and ELIZABETH BARR,

    Defendants-Appellees.

No. 98-1472

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE D. COLO.**
**(D.C. NO. 97-Z-2265)**

---

Vincent C. Todd, Lakewood, Colorado, for the Plaintiff-Appellant.

William A. Tuthill III, Assistant County Attorney for Jefferson County, Golden, Colorado, (Frank J. Hutfless, County Attorney, with him on the brief), for the Defendants-Appellees.

---

Before **HENRY** , **LUCERO** , and **MURPHY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

The appellant, Kevin Whitesel, brought an action for damages pursuant to 42 U.S.C. § 1983 against several pretrial services officers in the First Judicial District of Colorado, alleging that they violated his constitutional rights by issuing a temporary restraining order prior to a hearing before a judge. Mr. Whitesel further alleged that the Board of County Commissioners ("the Board") established the policy authorizing the officers to issue the order. In a separate § 1983 claim, Mr. Whitesel alleged that the Director and two employees of the Jefferson County Department of Human Services (collectively "Human Services employees") violated his due process rights in obtaining a default judgment against him for child support and in initiating a wage assignment.

The district court found that the pretrial services officers were entitled to quasi-judicial absolute immunity and granted judgment as a matter of law in their favor. The court also granted judgment in favor of the Board. As to the Human Services employees, the court determined that none of their actions, as alleged by Mr. Whitesel, established a violation of clearly established federal rights. Thus, the court granted summary judgment in their favor as well. For the reasons set forth below, we affirm the district court's judgment in part, and vacate it in part, and remand for proceedings consistent with this opinion.

## I.    BACKGROUND

### A.    Pretrial Service Officers

On September 10, 1997, Mr. Whitesel was arrested and charged with Third Degree Assault, in violation of Colo. Rev. Stat. § 18-3-204, and Child Abuse, in violation of Colo. Rev. Stat. § 18-6-401. In connection with his arrest and charges, appellee June H. Candelario, a pretrial services employee, acting as a bond commissioner, filled out a document entitled "Temporary Restraining Order Pursuant to Section 18-1-1001, C.R.S" ("TRO"). Aplt's App. at 40. This document bore the stamped signature of Judge Charles T. Hoppin. It ordered Mr. Whitesel not to "harass, molest, intimidate, retaliate against, or tamper with any witness to or victim" of the crimes for which he was charged.        Id.  This provision is mandatory, pursuant to Colo. Rev. Stat. § 18-1-1001(1), for persons arrested for domestic violence offenses.

The TRO contained additional provisions requiring that Mr. Whitesel: "[(1)] vacate the home of the victim and stay away from any other location the victim is likely to be found. . . . [(2)] refrain from contacting or . . . communicating with the victim. . . . [(3)] not possess or control a firearm or other weapon. . . . [(4)] not possess or consume alcoholic beverages or controlled substances."  Id.  These provisions are discretionary under Colo. Rev. Stat. § 18-

1-1001(3). [1] Ms. Candelario signed her name on the TRO, certifying that it was "a true and complete copy of the original order."     Id.

When Mr. Whitesel returned to the family residence, several hours later, his wife called the police, who re-arrested him for violating the discretionary provisions of the TRO. At a subsequent hearing, a state court judge ruled that the plain language of § 18-1-1001(3) implied that the court must afford the defendant a hearing prior to issuance of a TRO containing one or more of the discretionary provisions. Because Mr. Whitesel had not been afforded a hearing prior to issuance of the discretionary provisions, the court held these provisions were not

---

[1] Colo. Rev. Stat. § 18-1-1001(3) states:

Upon motion of the district attorney, or on the court's motion to protect the alleged victim, the court may, in cases involving domestic violence as defined in section 18-6-800.3(1), enter any of the following further orders against the defendant:
(a) An order to vacate or stay away from the home of the victim and to stay away from any other location where the victim is likely to be found;
(b) An order to refrain from contact or direct or indirect communication with the victim;
(c) An order prohibiting possession or control of firearms or other weapons;
(d) An order prohibiting possession or consumption of alcohol or controlled substances;
(e) Any other order the court deems appropriate to protect the safety of the alleged victim.

(emphasis added).

valid at the time of the alleged violation. Following the court's ruling, the government dismissed the charges against Mr. Whitesel for violating the TRO.

### B. Human Services Employees

In a separate matter, on February 25, 1997, the Jefferson County Department of Human Services served Mr. Whitesel with administrative process, pursuant to the Colorado Administrative Procedure Act for the Establishment and Enforcement of Child Support, Colo. Rev. Stat. §§ 26-13.5-101 through 13.5-112, in an effort to obtain an ongoing child support obligation for his two children. The administrative process notified Mr. Whitesel of his financial liability and advised him of a scheduled negotiation conference on March 5, 1997 at which he was entitled to contest liability. The notice further informed Mr. Whitesel that failure to appear at or reschedule the negotiation conference would result in issuance of an order of default, which would then be filed with the Jefferson County District Court. The Human Services Department rescheduled the negotiation conference for March 14, 1997 in order to comply with the ten-day notice provision set forth in Colo. Rev. Stat. § 26-13.5-104.

Instead of appearing at the hearing, Mr. Whitesel served upon the Jefferson County Department of Human Services a "Motion to Quash Administrative Process and Notice of Financial Responsibility for Failure to Comply with § 26-

13.5-104(1), Colorado Revised Statutes" ("Motion to Quash"). He also filed this pleading with the Jefferson County District Court. Because the process was still at the administrative level, the Jefferson County Department of Human Services had not yet filed the matter in the Jefferson County District Court. Thus, the court had no case within which to file Mr. Whitesel's Motion to Quash and, therefore, placed it in a dependency and neglect file.

When Mr. Whitesel failed to appear at the negotiation conference, Department of Human Services employees Brenda Bouchard and Elizabeth Barr filed an application for default in the Jefferson County District Court. In their application, Ms. Bouchard and Ms. Barr did not inform the district court of Mr. Whitesel's Motion to Quash.

On March 27, 1997, the Jefferson County District Court issued a default order for child support with an effective date of April 25, 1997. On April 2, 1997, Ms. Bouchard sent a Notice of Wage Assignment to Mr. Whitesel's employer, advising that certain wages should be withheld from Mr. Whitesel's pay "no later than the first pay period that begins at least 14 days from" April 2, 1997. Aplt's App. at 106. Not later than April 28, 1997, Mr. Whitesel successfully obtained an order staying the support order and garnishment proceeding. At this time, Mr. Whitesel also received a hearing on the matters raised in his Motion to Quash. The state court denied the Motion to Quash.

However, on its own motion, the court set aside the default judgment and allowed Mr. Whitesel to contest the child support enforcement action on the merits.

## II.    DISCUSSION

### A.    Pretrial Service Officers

#### 1.    Conversion of Motion to Dismiss to Motion for Summary Judgment

In response to Mr. Whitesel's Complaint, the defendants filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), and attached supporting affidavits and exhibits.  Mr. Whitesel in turn filed a "Motion for Leave to Treat Portions of Defendants' Motion to Dismiss as a Motion [for Summary Judgment] Under Rule 56 and for Leave to Respond."  Aplt's App. at 84.  He informed the court that he was awaiting the transcript of a ruling by Judge Hoppin that would support the allegations in his complaint.

The district court issued an order dismissing pretrial services defendants Ms. Sengenberger, Ms. Stransky, and Ms. Candelario, (collectively "pretrial service officers"), finding they were entitled to absolute quasi-judicial immunity from civil suit.  In the same order, the court granted Mr. Whitesel's motion to treat the motion to dismiss as one for summary judgment to the extent either party submitted materials outside the pleadings as to issues involving the remaining defendants.  The court granted Mr. Whitesel leave to file a response brief.

Mr. Whitesel now argues that the district court was limited to, but went beyond, the four corners of the complaint in dismissing the pretrial service officers pursuant to Fed. R. Civ. P. 12(b)(6). He further implies the court erred in dismissing these individuals without first permitting him to respond.

Mr. Whitesel's procedural argument is unavailing. First, Mr. Whitesel overlooks the fact that, although the court's initial order dismissed the pretrial service officers pursuant to Rule 12(b)(6), at Mr. Whitesel's subsequent request, it reconsidered their dismissal under summary judgment standards, eventually entering judgment as a matter of law in their favor. See Aplt's App. at 147, 152, 155. Thus, the court was not limited to the facts alleged in the complaint and was entitled to consider any evidentiary materials submitted by either party.

Second, conversion of the motion to dismiss, with respect to the pretrial service officers, was proper. "A court may convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment in order to consider matters outside of the plaintiff's complaint." Brown v. Zavaras, 63 F.3d 967, 969 (10th Cir. 1995). Prior to conversion, however, the trial court must "give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by Rule 56." Id. (quotations omitted).

These requirements were satisfied here. First, Mr. Whitesel himself initially requested the court to treat the motion to dismiss as one for summary judgment to the extent it relied on matters outside of the complaint. Thus, he had notice that the court might convert the motion. See Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (stating that "[t]he essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted to one for summary judgment").

Second, although the sequence of events here was unique, Mr. Whitesel had an adequate opportunity to respond before the court granted summary judgment in favor of the pretrial service officers. Although the court initially dismissed these individuals pursuant to Rule 12(b)(6) without allowing Mr. Whitesel to respond, Mr. Whitesel alleged in his response brief on the remaining claims that their dismissal was in error. In essence, he asked the court to reconsider its ruling under summary judgment standards. See Aplt's App. at 152 (interpreting Mr. Whitesel's position as "objecting because [the court had] dismissed [Sengenberger] and Stranski and Candelario on a motion to dismiss when [it] should have dismissed them on a motion for summary judgment.").

More importantly, in support of this claim of error, he attached an affidavit and the transcript of Judge Hoppin's ruling to his response brief, thus, clearly urging the court's consideration of both documents. See Collier v. City of

Chicopee , 158 F.3d 601, 603 (1st Cir. 1998) (holding conversion is proper when the non-movant appends materials to his opposition and urges the court to consider them). Therefore, Mr. Whitesel was able to present evidentiary materials before the court reconsidered, and upheld, dismissal of the pretrial service officers under summary judgment standards.

Additionally, we note that Mr. Whitesel's counsel did not argue during the district court hearing, nor does he maintain on appeal, that there exists additional evidence that would support denial of summary judgment. Further, he does not contest the authenticity or accuracy of the evidentiary materials attached to the motion to dismiss. Cf. Parrino v. FHP, Inc. , 146 F.3d 699, 706 n.4 (stating that where a defendant attaches a document to a Rule 12(b)(6) motion that "is integral to the plaintiff's claims and its authenticity is not disputed , the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished.") (emphasis added) (internal quotations omitted).

For the foregoing reasons, we conclude Mr. Whitesel had notice and an adequate opportunity to respond before the court reconsidered dismissal of the pretrial service officers under summary judgment standards. Accordingly, there was no error in the court's conversion, and it was entitled to rely on materials outside of the complaint.

## 2. Summary Judgment Review

Because the court converted the appellees' motion to dismiss to one for summary judgment, we review under summary judgment standards as well. We consider the grant of summary judgment de novo and apply the same legal standard as the district court. See Simms v. Oklahoma, ex rel., Dep't of Mental Health & Substance Abuse Services, 165 F.3d 1321, 1326 (10th Cir.), cert. denied, 120 S. Ct. 53 (1999). Summary judgment is proper if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326.

The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Mitchell v. City of Moore, Oklahoma, Nos. 98-6446, 99-6177, 99-6101, 99-6121, 2000 WL 954930, at *4 (10th Cir. July 11, 2000). If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein," from which a rational trier of fact could find for the nonmovant. Id. If the nonmovant fails to establish a genuine issue of material fact, then "we determine whether the

-11-

substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." Sealock v. Colorado, No. 99-1185, 2000 WL 954940, at *2 (10th Cir. July 11, 2000).

### 3. Absolute Quasi-Judicial Immunity

The district court granted summary judgment in favor of the pretrial service officers on grounds that, as a matter of law, they were entitled to absolute quasi-judicial immunity for their actions. We uphold that conclusion.

"Judges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir. 1981) (citing Stump v. Sparkman, 435 U.S. 349 (1978)). A judge does not act in the clear absence of all jurisdiction even if "the action he took was in error, was done maliciously, or was in excess of his authority." Stump, 435 U.S. at 356-57. Moreover, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Id. at 359.

"'[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.'" Valdez v. City and County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989) (quoting Forrester v. White, 484

-12-

U.S. 219, 227 (1988)). Consequently, "[i]mmunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved." Henriksen , 644 F.2d at 855. Thus, absolute judicial immunity has been extended to non-judicial officers where "their duties had an integral relationship with the judicial process." Eades v. Sterlinske , 810 F.2d 723, 726 (7th Cir. 1987).

Mr. Whitesel argues that pursuant to state statute, the additional, discretionary provisions of the TRO could only be issued by a judge following a hearing, and not by the pretrial service officers. Therefore, he contends that, because he did not receive a hearing before a judge, the pretrial service officers falsely certified that the TRO was a true and correct copy of an original order issued by a judge.

We are not persuaded by Mr. Whitesel's argument. "There can be no doubt that . . . the decision whether to order the pretrial release of a criminal defendant . . . [is an] important part[] of the judicial process in criminal cases." Tripati v. INS, 784 F.2d 345, 348 (10th Cir. 1986). Thus, we have held that "[those] who assist in these determinations perform critical roles[,] . . . intimately associated with the judicial phase of the criminal process," and, therefore, they are entitled to absolute immunity from civil suit for damages. Id.

-13-

Here, the undisputed evidence demonstrates that the pretrial service officers were designated by the judges of the First Judicial District to act as bond commissioners. Colo. Rev. Stat. § 16-4-105(1)(o) permits a court to designate persons to prepare information concerning the accused in order to assist the judge in deciding whether to order release on personal recognizance. Pursuant to this statutory authority, the judges of the First Judicial District authorized the pretrial service officers, as bond commissioners, to implement the bond schedule of the First Judicial District.

Although the bond schedule in effect at the time of Mr. Whitesel's arrest did not address TROs specifically, in "cases involv[ing] allegations of domestic violence, the pretrial services officers, acting as bond commissioners, were expected to deliver to the defendant a temporary restraining order pursuant to § 18-1-1001, C.R.S." Aplt's App. at 35 (Aff't of Judge Charles T. Hoppin); see also id. at 37 (Aff't of Judge Henry E. Nieto). Moreover, "[t]he temporary restraining orders that were supplied to the pretrial services officers were issued on a state judicial form approved for use statewide" and were pre-signed by Judge Hoppin. Aplt's App. at 35.

Thus, there is no genuine issue as to whether the pretrial service officers had the authority to assist the court in making bond decisions, to implement the bond schedule of the First Judicial District, and to provide those arrested on

-14-

domestic violence charges with the mandatory TRO set forth in Colo. Rev. Stat. § 18-1-1001(1). [2] See Aplt's Br. at 4, n.1 (conceding that the pretrial service officers had authority to release him pursuant to the bond schedule). We conclude that, as a matter of law, these are judicial acts integral to the judicial process and therefore are cloaked in absolute immunity. See Tripati , 784 F.2d at 348.

Mr. Whitesel further argues that because they did not have the authority to enter the discretionary orders set forth in § 18-1-1001(3), the pretrial service officers acted in clear absence of all jurisdiction. In support of his argument, Mr. Whitesel relies on Judge Hoppin's subsequent ruling that the discretionary orders were invalid because, under the plain language of the statute, they could only be entered after the court afforded the defendant a hearing, and such procedure did not occur here. See Colo. Rev. Stat. § 18-1-1001(3); Aplt's App. at 115-16 (Trans. of Proc. held Feb. 28, 1997).

However, even if the pretrial service officers exceeded their authority or committed "grave procedural errors" in issuing the discretionary orders, such

---

[2] We note that the purpose for authorizing the pretrial services officers to perform these tasks was to "permit[] eligible arrestees to be released on bond without having to spend the night or weekend in jail." Aplt's App. at 35. Mr. Whitesel does not appear to contest that the pretrial services officers could have kept him in custody prior to his initial appearance before a judge. It is hard to imagine that, if he had been given the option, Mr. Whitesel would have chosen to remain in jail while awaiting a hearing before a judge, rather than be released with the TRO containing both the mandatory and discretionary provisions.

actions do not equate to acting in clear absence of all jurisdiction. See Stump, 435 U.S. at 359. Thus, Judge Hoppin's ruling—that the additional provisions were invalid because of failure to follow proper state procedure—is of little consequence to the appellees' immunity. See, e.g., Thomas v. Palacios, No. 98-4196, 1999 WL 710340, at *1 (10th Cir. Sept. 13, 1999) ("Despite the Utah Supreme Court's subsequent ruling that defendant [court employee] did not have the authority to issue warrants, defendant issued the warrant based on longstanding, previously accepted practice in Utah" and was, therefore, entitled to quasi-judicial immunity).

The pretrial service officers acted within the general subject matter of their jurisdiction. As stated previously, they were authorized to implement the bond schedule and provide domestic violence arrestees with a mandatory TRO, pursuant to § 18-1-1001(1). Therefore, we cannot conclude they acted in "clear absence of all jurisdiction." Stump, 435 U.S. at 356; see, e.g., Newton v. Buckley, No. 96-4202, 1997 WL 642085, at *4 (10th Cir. Oct. 17, 1997) (holding court clerk did not act in absence of all jurisdiction and was therefore absolutely immune from suit even if she did not follow proper procedures in issuing a bench warrant and using the judge's stamped signature); Figueroa v. Blackburn, 208 F.3d 435, 443-45 (3d Cir. 2000) (holding that a judge had absolute judicial immunity for holding a party in contempt and jailing him without granting a stay

-16-

as required by court rule even though in hearing the case she acted contrary to a Supreme Court of New Jersey directive); Boyer v. County of Washington, 971 F.2d 100, 102 (8th Cir. 1992) (concluding court clerks were entitled to absolute immunity for signing and issuing arrest warrant because, although they exceeded their authority in issuing the warrants, they were authorized by state law to sign such warrants and therefore did not act in complete absence of all jurisdiction); Staples v. Edwards, 592 F. Supp. 763, 765 (E.D. Miss. 1984) (holding that because defendant Pre-Trial Release Commissioner "had jurisdiction over the subject matter—determining the conditions for pre-trial release of persons accused of bailable offense," she was entitled to absolute immunity even if she exceeded her authority in not releasing plaintiff on bail).

In his final argument, Mr. Whitesel contends the pretrial service officers were not entitled to absolute quasi-judicial immunity because their actions in signing and preparing the TRO were ministerial, not discretionary. Although absolute immunity generally extends to non-judicial officers performing discretionary judicial acts, some circuits, including our own, have held that those performing ministerial acts at the direction of a judge are also entitled to absolute immunity. See, e.g., Valdez, 878 F.2d at 1287-88; Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir.1988) (concluding deputy clerk entitled to absolute immunity from suit for issuing an arrest warrant at the direction of the assistant circuit

judge); Tarter v. Hury , 646 F.2d 1010, 1013 (5th Cir.1981) (stating that court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction"); Waits v. McGowan , 516 F.2d 203, 206 (3d Cir.1975) (stating "where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge").

As we explained in Valdez :

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes a judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control. . . . [I]t is simply unfair to spare the judges who give them orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a lightening rod for harassing litigation aimed at judicial orders.

878 F.2d at 1289 (internal quotations omitted); see also Ashbrook v. Hoffman , 617 F.2d 474, 476 (7th Cir. 1980).

The reasoning of Valdez is fully applicable here. The evidence establishes that the pretrial service officers were acting pursuant to judicial directives and were expected to sign and deliver the TROs on the standard form approved by the First Judicial District. Therefore, even if their actions could be characterized as

-18-

ministerial, they would still be absolutely immune from civil suit.     See Valdez ,

878 F.2d at 1289-90.

Finally, we note that this is a paradigmatic case for judicial immunity in

that it supports the most common justification for the doctrine:  there are

effective, alternative methods of protecting litigants against judicial errors that

are less detrimental to the judicial process than exposing judges to liability for

civil claims.  In   Forrester v. White  , the Supreme Court observed that:

> [S]uits against judges [are not] the only available means through which
> litigants can protect themselves from the consequences of judicial error.
> Most judicial mistakes or wrongs are open to correction through
> ordinary mechanisms of review, which are largely free of the harmful
> side-effects inevitably associated with exposing judges to personal
> liability.

484 U.S. 219, 227 (1988).  Here, the error of which Mr. Whitesel complains was

corrected by the judicial process.  Mr. Whitesel obtained a hearing on the

lawfulness of the TRO and the state court ruled in his favor, concluding that the

discretionary orders were invalid because they were issued in violation of state

statutory procedure.  Thereafter, the government dismissed the charges against

Mr. Whitesel for violating the TRO.

For all of the foregoing reasons we conclude the court did not err in

granting summary judgment in favor of the pretrial service officers.


**B.     Board of County Commissioners**

-19-

Municipal entities and local governing bodies are not entitled to the traditional common law immunities for section 1983 claims. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993). Thus, to establish a claim for damages under section 1983 against the Board, Mr. Whitesel must prove the Board (1) executed a policy or custom, (2) that caused Mr. Whitesel to suffer deprivation of constitutional or federal rights. See Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992); Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986).

In his complaint, Mr. Whitesel alleged that the individual pretrial service officers acted pursuant to a policy established by the Board when they issued the discretionary provisions of the TRO prior to a hearing before a judge. However, the parties' subsequent pleadings did not address the question of the existence of a Board policy. In particular, the defendants' motion to dismiss, which the court converted to a motion for summary judgment, did not contest the existence of a policy, but rather stated in conclusory fashion that Mr. Whitesel failed to establish a deprivation of constitutional or federal rights. Mr. Whitesel's submissions were similarly deficient. His response to the motion to dismiss did not address the alleged Board policy, and, after the court converted the motion to one for summary judgment, he did not submit any evidence in support of his claim against the Board.

Perhaps because of the parties' failure to discuss the Board's liability, it appears that the district court did not address the matter either. At one point during the hearing, the defendants' attorney expressed confusion over whether both of Mr. Whitesel's separate 1983 claims were being alleged against the Board. Mr. Whitesel's attorney then clarified that his second 1983 claim involving the Human Services employees, discussed _infra_, was not being alleged against the Board. _See_ Aplt's App. at 163. The parties then moved on to discuss the merits of Mr. Whitesel's second claim. Thus, there was never any discussion during the hearing as to the Board's liability on the first claim—in which he alleged that the Board establish the policy pursuant to which the pretrial service officers had issued the discretionary provisions of the TRO.

Immediately after the arguments on Mr. Whitesel's second claim the court made its ruling with respect to the Board:

> [I]t appears to the Court that if there is any problem with their actions, it involves violation of Colorado law and not federal law and not [the] federal Constitution. . . . I can see nothing that was claimed . . . done by the Board of County Commissioners which would rise to a level of a violation of either the U.S. Constitution or federal law. And therefore it appears that that entity as a defendant should be dismissed.

Aplt's App. at 180-81. In its order granting judgment in favor of all defendants, the court incorporated these oral conclusions. The court appears to have addressed the Board's liability as to Mr. Whitesel's second claim (involving the action of the Human Services employees) but failed to specifically address the

Board's liability as to his first claim (involving the actions of the pretrial service officers).

Although we may affirm the district court's grant of summary judgment in favor of the Board for any reason supported by the record,      see Perry v. Woodward , 188 F.3d 1220, 1232 (10th Cir. 1999), the record in this case does not permit us to do so.  Mr. Whitesel never offered any evidence in support of his allegation regarding the Board's policy.  However, he was never required to do so:  the defendants never contested his initial allegation that such a policy existed.  Moreover, as noted above, the district court never addressed the question of whether there was such a policy and, if so, whether it violated Mr. Whitesel's due process rights.

We also note that Mr. Whitesel's claim against the Board raises an important legal issue.  He has alleged that the Board established a policy whereby, prior to a hearing before a judge, pretrial service officers issued the discretionary restraining orders set forth in § 18-1-1001(3) to persons arrested on domestic abuse charges.  Although at least one judge in the First Judicial District of Colorado has concluded that failure to provide a pre-issuance hearing renders the discretionary orders invalid under state law, it is a separate and unsettled question whether that practice comports with the due process requirements of the federal constitution.

The discretionary restraining orders at issue entail some degree of restraint on liberty and property. For example, one such provision requires the accused to vacate the home of the victim, which, in cases of domestic violence, may be the home of the accused as well. See C.R.S. § 18-1-1001(3)(a). Thus, we know at least some process is due. Exactly what or how much process is due, however, is the pivotal issue. It appears as though courts have had little opportunity to decide this issue or ones analogous to it. See, e.g., United States v. Kirschenbaum, 156 F.3d 784, 792 (7th Cir. 1998) ("The more difficult issue is the one left open by the [Supreme] Court: 'whether the Due Process Clause requires a hearing before a pretrial restraining order [restricting property rights] can be imposed.'") (quoting United States v. Monsanto, 491 U.S. 600, 615 n.10 (1989)); Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts, 83 F. Supp. 2d 204, 212 (D. Mass. 2000) (stating "there is very little case law on the constitutionality of . . . ex parte temporary restraining order procedure[s]" that involve petitions by victims of domestic abuse seeking orders requiring the abuser to vacate the home and avoid contact with victim). The issue is a meaningful one that merits substantive and focused briefing by the parties beyond what has been provided, and warrants consideration by the district court prior to our review.

However, to succeed on his claim against the Board, we reiterate that Mr. Whitesel must first prove that the pretrial service officers were acting pursuant to

-23-

a policy created by the Board. We have already concluded the record establishes that the pretrial service officers were acting pursuant to a policy formulated by the judges of the First Judicial District of Colorado. At this point it is not clear that the policy of the state judiciary included authorizing the pretrial service officers to issue the discretionary restraining orders prior to a hearing before a judge. However, we note, such instruction might be implied by the fact that the discretionary orders were listed on the judicially approved TRO form. Nevertheless, we emphasize that the Board cannot be liable for merely implementing a policy created by the state judiciary. In order to prevail on his claim against the Board, Mr. Whitesel must demonstrate that the Board was "the moving force" behind the pretrial services officers issuance of the discretionary orders. See Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan. , 996 F.2d 1035, 1041 (10th Cir. 1993).

We, therefore, conclude that the district court's grant of summary judgment to the Board on Mr. Whitesel's first claim involving the TRO is not supported by the record. That claim must be remanded to the district court for further development of the parties' factual and legal contentions.

### C. Human Services Employees

Mr. Whitesel's second § 1983 claim alleges that Jefferson County Department of Human Services employees Brenda Bouchard and Elizabeth Barr denied him due process in their efforts to obtain a child support enforcement judgment and garnishment of wages. In particular, he maintains that Ms. Bouchard and Ms. Barr violated his due process rights in two instances: (1) when they failed to notify the court of his Motion to Quash the administrative process; and (2) when they falsely advised his employer to garnish his wages on the first pay period after April 16, 1997, when the default order stated its effective date was not until April 25, 1997. Mr. Whitesel also named as a defendant Nelson Nadeau, Director of Human Services, asserting that he created the policy pursuant to which Ms. Bouchard and Ms. Barr were acting.

The district court granted summary judgment in favor of the Human Services employees, finding that they were entitled to qualified immunity. "[W]e review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir.1995) (quotations omitted). "This difference arises from the unique nature of qualified immunity, which is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial." Nelson v. McMullen, 207 F.3d 1202, 1206 (10th Cir. 2000).

"When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." Id. "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." Albright v. Rodriguez, 51 F.3d 1531, 1534-35 (10th Cir.1995) (citations omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000) (quotations omitted). If, and only if, the plaintiff establishes both elements of the test does a defendant then bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Albright, 51 F.3d at 1535 (quotations and citation omitted).

Here, the district court concluded that Mr. Whitesel had failed to show that the Human Services employees' actions violated a clearly established federal or constitutional right. We agree with that conclusion. Although, it is clearly established that "[i]n . . . cases [involving garnishment of wages], the Due Process Clause requires notice and a hearing prior to application of the

-26-

garnishment remedy," North Georgia Finishing, Inc. v. Di-Chem, Inc. , 419 U.S. 601, 611 n.2 (1975) (citing Sniadach v. Family Finance Corp. , 395 U.S. 337, 340 (1969)), Mr. Whitesel has failed to show the Human Services employees' actions denied him of this right.

As to the first alleged violation, Mr. Whitesel has failed to direct us to any authority establishing that the Human Services employees violated due process by failing to inform the court of the Motion to Quash prior to obtaining a default judgment. Ms. Bouchard and Ms. Barr were acting pursuant to the state administrative procedures mandated by statute. Those procedures afforded Mr. Whitesel notice of his financial responsibility and the opportunity to contest it before issuance of administrative default and approval of the default in district court. Moreover, Mr. Whitesel does not contest the constitutionality of the state procedures. In fact, he conceded to the district court that "the [state] statute can be read such that it is constitutional." Aplt's App. at 169-70.

More importantly, Mr. Whitesel admits he "[u]ltimately . . . received due process." Aplt's App. 173. He obtained a stay of execution of the default order no later than April 28, 1997, and on that same date received a hearing in state court on his Motion to Quash. The court ultimately denied the motion, finding the Human Services employees fully complied with state procedure in serving him with administrative process. Mr. Whitesel never appealed this decision. Further,

-27-

the court sua sponte set aside the order of default and provided Mr. Whitesel with a hearing on the merits of the child support enforcement action. Mr. Whitesel availed himself of state procedures and successfully obtained a reduction in the amount of support liability.

Mr. Whitesel's second contention is also without merit. Although he alleges that the Human Services employees falsely notified his employer to begin garnishing his wages prior to the effective date of the default order, at most, their actions would be a violation of a state court order. However, "a violation of state law alone does not give rise to a federal cause of action under § 1983." Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir.1994); see also Roy v. City of Augusta, 712 F.2d 1517, 1522-23 (1st Cir.1983) (analyzing a § 1983 claim and noting that "[m]ere violations of state law do not, of course, create constitutional claims").

Further, Mr. Whitesel conceded his wages were "released before they were paid over to the court." Aplt's App. at 168. The record establishes that "no child support payment was received from Mr. Whitesel through a garnishment until August 14, 1997." Aplt's App. at 132 (Aff'd of Debbie Moss). This occurred after Mr. Whitesel was afforded a hearing to contest liability. Although he argues "the deprivation of property [was] the initial taking and holding of the wages" prior to receiving a hearing, he obtained notice and the opportunity to contest financial responsibility at the March 14, 1997 negotiation conference before this

-28-

alleged deprivation occurred.    Id. at 168.   Mr. Whitesel's choice to respond to the notice in his own manner by filing a Motion to Quash, rather than to participate in the state administrative process by attending or rescheduling the negotiation conference, does not equate to a denial of due process.

III.    **CONCLUSION**

For the reasons set forth above we AFFIRM the district court's grant of summary judgment in favor of the pretrial service officers, Ms. Sengenberger, Ms. Stransky, and Ms. Candelario, and Human Services employees, Ms. Bouchard, Ms. Barr, and Mr. Nadeau.   We VACATE the court's grant of summary judgment in favor of the Board of County Commissioners and REMAND for proceedings consistent with this opinion.