**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 10 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

AUTO-TROL TECHNOLOGY
CORPORATION,

      Plaintiff - Counter-Defendant -
      Appellee,

v.

J. FOX, INC., a California corporation;
JAMES FOX, an individual,

      Defendants - Counter-Claimants -
      Appellants.

No. 00-1412
(D. Ct. No. 99-N-358)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before, **TACHA**, Chief Judge, **McKAY**, and **ANDERSON**, Circuit Judges.

      This case involves a dispute over royalties that Appellee Auto-trol

Technology Corporation ("Auto-trol") allegedly owes to Appellants J. Fox, Inc.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and James Fox[1] ("Fox") under a software licensing agreement. Auto-trol brought suit seeking a declaratory judgment terminating its contractual relationship with Fox and establishing that Auto-trol did not owe Fox any royalties. Fox counterclaimed for breach of contract, fraudulent nondisclosure, and misrepresentation. The district court granted Auto-trol summary judgment on Fox's counterclaims, and certified its order as a final judgment under Rule 54(b). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM as to the causes of action accruing before February 24, 1993, and REVERSE and REMAND as to royalties that became due after February 24, 1993.

## I. Background

On March 17, 1982, Auto-trol and Fox entered into a License/Exchange Agreement ("Agreement") that granted Auto-trol the exclusive right to sublicense, or sell, computer software developed by Fox. In exchange, Auto-trol agreed to pay Fox a 60% royalty on all sublicenses within 60 days of the receipt of payment from the resale customers. The Agreement also required Auto-trol to: maintain adequate books and records of all sales of Fox's product; maintain all customer receipts from such sales; send Fox quarterly statements of total sales; certify that the amounts it paid were the full amounts owed; and allow Fox to audit its

---

[1]James Fox is the sole officer, director, shareholder and employee of J. Fox, Inc.

- 2 -

records.

On February 10, 1983, Fox's attorney wrote to Auto-trol complaining that the terms of the Agreement had not been met with respect to the payment and reporting schedule. Fox proposed, and Auto-trol accepted, changes in the schedule of royalty payments and changes that permitted Fox to terminate the Agreement under certain conditions.

In 1986, the parties amended the Agreement to change Fox's royalties to 50% of sublicense fees and 50% of software maintenance fees, and to make royalties due within 30 days following the end of the calendar quarter. During these negotiations, Fox's attorney again noted that he had not received the contractually required statements of total sales and payments.

On February 23, 1987, Fox sent Auto-trol a letter identifying a discrepancy of $214,059 between payments Fox should have received and what Fox actually received. On May 20, 1987, Auto-trol replied to Fox's letter, conceding that some additional royalties were due. Auto-trol explained that the underpayment resulted from confusion as to whether royalties were due upon shipment to customers or upon receipt of payment from customers, and from the lack of an effective system for tracking sales according to the model of software package sold. On June 17, 1987, Fox again wrote to Auto-trol, and indicated that discrepancies still remained between Auto-trol's and Fox's calculations of

royalties. Correspondence continued through the end of 1987 regarding these discrepancies.

On March 30, 1988, Auto-trol stated that it had responded to all of Fox's concerns and that it would no longer allow inquiries into transactions prior to January 1987. On April 19, 1988, Auto-trol proposed an amendment to the Agreement that would limit to two years the period in which Fox could raise questions regarding royalties. Fox rejected the proposed amendment.

On May 22, 1989, Fox wrote to Auto-trol to request a summary of all royalty payments due, and asked when he could expect whatever additional royalties were owed to him. On November 24, 1990, Fox sent Auto-trol a "master list" that showed every instance in which Fox had found evidence of a sale of Fox's software, and a separate column indicating whether or not Fox had received payment for the alleged sale. After sending the master list in 1990, Fox failed to follow up, except possibly to call to ensure that the document had been received.

Auto-trol notified Fox on January 17, 1995, that it intended to eliminate Fox's products from its product lines and that it wished to terminate the Agreement. On March 15, 1995, Fox replied by asking to review Auto-trol's records of Fox software sales prior to terminating the Agreement, because he believed that there were a number of unanswered inquiries regarding past payments. On October 25, 1996, Fox wrote Auto-trol that he did not accept Auto-

trol's attempt to terminate the Agreement, and that he was exercising his option to examine their records. After some negotiations regarding the conditions of the visit, Fox visited Auto-trol on January 13 and 14, 1997. On February 12, 1997, Fox submitted an invoice for $4,162,115.35 in past-due royalties and interest, which Fox claims to have discovered during his audit of the records.

Auto-trol filed suit on January 27, 1999, seeking declaratory judgment that it owed nothing further to Fox under the Agreement, and that the Agreement had been terminated. On February 24, 1999, Fox counterclaimed for breach of contract, fraudulent nondisclosure, and misrepresentation.

On December 10, 1999, Auto-trol moved for summary judgment on the counterclaims, arguing that all of the counterclaims were barred by the applicable statutes of limitations, and that the second and third counterclaims were contract claims disguised as tort claims for fraud.

The district court granted summary judgment to Auto-trol and dismissed all three counterclaims.

## II. Discussion

Fox now appeals the dismissal of his breach of contract claim, arguing that there were genuine issues of material fact concerning the running of the statute of limitations. He asserts that the statute did not start running until Fox inspected Auto-trol's records in 1997 because he was not aware of all the facts relevant to

his claim, that the statute of limitations was tolled by Auto-trol's breach of a fiduciary relationship, and that the statute of limitations should be tolled based on principles of equity.

A.    Standard of Review

We review the grant of summary judgment de novo, applying the same standard as the district court. Whitesel v. Sengenberger, 222 F.3d 861, 866 (10th Cir. 2000). Summary judgment is appropriate when there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party. Id. (citing Fed. R. Civ. P. 56(c)).

B.    Statute of Limitations

Colorado law applies a six-year statute of limitations to "actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action . . . ." Colo. Rev. Stat. § 13-80-103.5(1)(a). The statute of limitations starts running when a party discovers, or should have discovered through the exercise of reasonable diligence, the breach of contract giving rise to the claim. Colo. Rev. Stat. § 13-80-108(3) to (6). This requires the discovery of all material facts essential to show the elements of the cause of action. Miller v. Armstrong World Indus., Inc., 817 P.2d 111, 113 (Colo. 1991).

The time when a party first discovered, or through reasonable diligence should have discovered, the breach of contract is normally a question of fact for

the trier of fact.  <u>Morris v. Geer</u>, 720 P.2d 994, 997 (Colo. Ct. App. 1986).  But where the undisputed facts clearly show that a party discovered or should have discovered the breach of contract by a particular date, the issue may be decided as a matter of law.  <u>Id.</u>

Fox filed his counterclaims against Auto-trol on February 24, 1999.  The issue before us, therefore, is whether the undisputed facts clearly show that by February 24, 1993, Fox knew, or should have known through the exercise of reasonable diligence, that Auto-trol had breached the Agreement.

After thoroughly reviewing the entire record on appeal, we conclude for substantially the same reasons cited by the district court, that Fox knew or should have known of the breach of contract prior to February 24, 1993, that Auto-trol did not owe Fox a fiduciary duty, and that equitable principles do not provide a reason to toll the statute of limitations.  Therefore, the statute of limitations was not stayed at any point after February 24, 1993.

C.    <u>Royalties That Came Due After February 24, 1993</u>

Fox argues that any cause of action that accrued after February 24, 1993 is not time-barred.  Fox filed his counterclaim on February 24, 1999, and the applicable statute of limitations is six years.  Colo. Rev. Stat. § 13-80-103.5(1).  Fox argues that because his royalties were due in installments, a separate cause of action arose on each installment, and the statute of limitations began to run

against each installment when it became due.  <u>In Re Application of Church</u>, 833 P.2d 813, 814 (Colo. Ct. App. 1992).  Fox has presented evidence that he continued to earn royalties after February 24, 1993, until at least March 31, 1995.  Because the district court did not address these claims, we remand with instructions to determine whether or not royalties that came due after February 24, 1999 are barred by the statute of limitations.

## III.  <u>Conclusion</u>

We agree with the district court that the statute of limitations was not tolled.  We therefore AFFIRM its grant of summary judgment dismissing counterclaims for those causes of action that accrued before February 24, 1993, but REVERSE and REMAND for a determination of whether claims for royalties that became due after February 24, 1993, are also time-barred.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge