**Jeffery ANTOINE, Plaintiff–Appellant–Cross–Appellee,**

v.

**BYERS & ANDERSON, INC., Shanna Ruggenberg, Defendants–Appellees–Cross–Appellants.**

Nos. 90–35293, 90–35362 and 90–35363.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1991.

Decided Dec. 13, 1991.

M. Margaret McKeown and Daniel Laster, Perkins Coie, Seattle, Wash., for plaintiff-appellant-cross-appellee.

Tyna Ek, Merrick, Hofstedt & Lindsey, Seattle, Washington; William P. Fite and Karen J. Feyerherm, Betts, Patterson & Mines, Seattle, Wash., for defendants-appellees-cross-appellants.

Blair B. Burroughs, Mills & Cogan, Seattle, Wash., for amicus.

Before WRIGHT, FARRIS and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Jeffery Antoine appeals the district court's grant of summary judgment in favor of Byers & Anderson, Inc. and Shanna Ruggenberg. Antoine asserted constitutional claims for violation of due process and access to the courts plus state law claims for breach of contract as a result of Ruggenberg's failure to produce a criminal trial transcript. The district court held that Ruggenberg, a delinquent court reporter, was absolutely immune as a quasi-judicial officer. Byers & Anderson, Ruggenberg's "employer," and Ruggenberg cross-appeal from denial of summary judgment on the issue of whether Ruggenberg was an independent contractor or an employee. We affirm.

I

Byers & Anderson, a court reporting firm in Tacoma, Washington, contracted with the United States District Court for the Western District of Washington to provide court reporting services. As required by the contract, Byers & Anderson sent Shanna Ruggenberg, one of its court reporters, to provide reporting services for the district court. Ruggenberg had provided court reporting services through Byers & Anderson for approximately one and one-half years.

Ruggenberg performed full-time court reporting services for the district court from February 1986 to August 1986. While working in the district court, Ruggenberg spent business hours at the courthouse and contacted Byers & Anderson daily by telephone or in person. To satisfy the requests for overnight transcripts, excerpts of cases, verbatim reports of proceedings, and transcript requests, Ruggenberg was required to transcribe at home in the evenings and on weekends. She was unable to satisfy all of the requests and soon found herself with a backlog of work.

Ruggenberg served on March 3 and 4, 1986, as the court reporter during Jeffery Antoine's jury trial for bank robbery. Antoine appealed his conviction for this crime. Immediately following the trial, on March 20, 1986, Antoine ordered the transcript of proceedings from Ruggenberg. He made a payment of seven hundred dollars on the transcription fee because he was not aware that he could have obtained a transcript without cost due to his inability to pay.

The court ordered the transcript filed by May 29, 1986. Ruggenberg did not meet this deadline, and did not request an extension. For the next three years, Antoine attempted to obtain the transcripts through motions, court orders and hearings. The court set five subsequent filing deadlines for the transcript. Ruggenberg failed to provide the complete transcript, communicate with counsel, or comply with the orders of the court.

Ruggenberg did produce fifty-eight pages of transcript, but she was unable to locate the notes and tapes for the remainder of the proceeding. In July 1988, over two years after the initial transcript request, Ruggenberg claimed in an affidavit that she had lost the remaining notes and tapes. Subsequently, however, in April of 1989, additional notes and tapes were discovered. These items were delivered to the district court, and a substitute reporter attempted to reconstruct the record pursuant to Fed.R.App.P. 10(c).[1] The substitute re-

---

1. Fed.R.App.P. 10(c) provides: *"Statement on the Evidence of Proceedings When No Report Was Made or When the Transcript Is Unavailable.* If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settle-

porter was unable to complete a full transcript of the criminal proceeding because the notes alone were insufficient to produce an adequate transcript. The reconstructed transcript was deficient in that it included no charge to the jury, no transcript of the sentencing, inaudible words or phrases, garbled testimony, and insufficient identification of speakers.

As a result of his delay in obtaining the partial transcript, Antoine's criminal appeal did not proceed to argument until four years after his conviction. In the underlying criminal action, this court vacated his conviction and remanded. We instructed the district court to determine whether Antoine was prejudiced by his lack of a complete transcript, and whether the delay in obtaining his transcript impaired his defense on retrial. *See United States v. Antoine,* 906 F.2d 1379, 1384 (9th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990). The present status of Antoine's criminal case is unknown.

Antoine filed the present action pursuant to 42 U.S.C. § 1983 (1988). The district court granted Byers & Anderson's and Ruggenberg's motions for summary judgment, holding that Ruggenberg's acts were within her official capacity as a quasi-judicial officer. Summary judgment was denied on Byers & Anderson's assertion that Ruggenberg was an independent contractor and not its employee. The court dismissed Antoine's federal claims and dismissed without prejudice his pendent state law claims.

## II

■ A federal agent acting under authority of purely federal law cannot be held liable under Section 1983.[2] *Scott v. Rosenberg,* 702 F.2d 1263, 1269 (9th Cir.1983), *cert. denied,* 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984). Because Ruggenberg was a federal, not state, agent, and because Antoine filed his action pursuant to 42 U.S.C. § 1983, we must first determine whether the district court had jurisdiction to adjudicate his claim. Antoine apparently recognized the problem and sought to amend his complaint to set forth the jurisdictional basis as 28 U.S.C. § 1331 (1988), but the claims were dismissed before the amendment became effective. The district court's summary judgment order disposed of the case as if it were a Section 1983 action.

■ On appeal, Antoine characterizes his suit as a *Bivens* action. *See* 28 U.S.C. § 1331; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We follow *Mullis v. United States Bankruptcy Court,* 828 F.2d 1385 (9th Cir. 1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988), and ignore Antoine's initial mischaracterization. In *Mullis,* the action against federal agents was filed as a Section 1983 action instead of as a federal question case. On appeal, this court ignored Mullis' mischaracterization and found jurisdiction in the district court under 28 U.S.C. § 1331. *Mullis,* 828 F.2d at 1387 n. 7. Because immunity in *Bivens* actions is coextensive with immunities recognized in Section 1983 cases, our decision is unaffected by the jurisdictional basis.[3] *See, e.g. Harlow v. Fitzgerald,* 457 U.S. 800, 818 n. 30, 102 S.Ct. 2727, 2738 n.

---

ment and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal."

**2.** 42 U.S.C. § 1983 (1988) provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**3.** No immunity is expressly provided for in an action brought pursuant to Section 1983. However, Section 1983 was not meant to "abolish wholesale all common-law immunities." *Burns v. Reed,* — U.S. ——, 111 S.Ct. 1934, 1938, 114 L.Ed.2d 547 (1991) (quotation omitted). Instead, "this section is to be read 'in harmony with general principles of tort immunities and defenses rather than in derogation of them.'" *Id.* (quoting *Imbler v. Pachtman,* 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976)). A similar analysis is applicable to *Bivens* actions.

30, 73 L.Ed.2d 396 (1982); *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978); *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1318 (9th Cir.1989). We conclude we have jurisdiction to hear this appeal.

## III

### A

■ We review de novo the district court's grant of summary judgment. *Price v. Hawaii*, 939 F.2d 702, 706 (9th Cir.1991). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 867 (9th Cir.1991). Issues of immunity are reviewed de novo. *Doe v. Atty. Gen. of the United States,* 941 F.2d 780, 783 (9th Cir. 1991).

### B

■ Antoine argues that court reporters are not, as a matter of law, entitled to the protection of absolute quasi-judicial immunity. We disagree.

In *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), the Supreme Court confirmed the common law principle that judges have absolute immunity for acts committed within their judicial jurisdiction. The Court described the principle as follows:

> For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of

judicial authority in a degrading responsibility.

> The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country.

*Bradley*, 80 U.S. (13 Wall.) at 347 (citation omitted).

In elaborating this principle, the Court stated the following with respect to the record of a lawsuit:

> If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and his usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him in every litigated case, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party—and that judge perhaps one of an inferior jurisdiction—that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party.

*Id.* at 349.

■ Judicial immunity is not limited to judges. It extends to other government officials who play an integral part in the implementation of the judicial function. Such officials enjoy derivative immunity (quasi-judicial immunity) which can be absolute if their conduct relates to a core judicial function. *See Mullis*, 828 F.2d at 1388–91 (bankruptcy judge, court clerk, and bankruptcy trustee covered by absolute immunity); *Sharma v. Stevas*, 790 F.2d 1486, 1486 (9th Cir.1986) (clerk of the United States Supreme Court has absolute quasi-judicial immunity because the activi-

ties are integral to the judicial process); *Stewart v. Minnick*, 409 F.2d 826, 826 (9th Cir.1969) (court reporters are quasi-judicial officers with regard to acts performed in their designated capacities).

With the decision of the Supreme Court in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the analysis of what judicial activities are entitled to quasi-judicial immunity was significantly refined. *Forrester* and subsequent cases confirm that a claim of immunity must be analyzed using a "functional" approach. *See, e.g., Burns*, 111 S.Ct. at 1939; *Forrester*, 484 U.S. at 224, 108 S.Ct. at 542–43; *Westfall v. Erwin*, 484 U.S. 292, 296 n. 3, 108 S.Ct. 580, 583 n. 3, 98 L.Ed.2d 619 (1988). "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester*, 484 U.S. at 227, 108 S.Ct. at 544 (emphasis added).

In *Forrester*, the Supreme Court limited absolute judicial immunity to actions that are either "judicial or adjudicative." *Id.* at 229, 108 S.Ct. at 545. By contrast, the *administrative* act of a judge in discharging a court employee was held not to be entitled to the protection of absolute immunity because this function was outside the realm of purely judicial activity. *Id.* The Court decided that although employment and other administrative decisions are crucial to the efficient operation of the judicial system, a judge's performance of these tasks does not bring them within the realm of judicial jurisdiction or make them adjudicative. *Id.* at 230, 108 S.Ct. at 545–46. The Court noted that absolute immunity is designed to facilitate independent and impartial adjudication, *id.* at 227, 108 S.Ct. at 544, but is not meant to insulate judicial officials from all liability for their actions, *id.* at 223, 108 S.Ct. at 542.

■ Ruggenberg can only receive absolute quasi-judicial immunity if her court reporting activities are part of the adjudicatory function. We conclude that they are.

28 U.S.C. § 753 (1988), known as the Court Reporter Act, gives us the answer to this inquiry. It reads, in relevant part, as follows:

(b) Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to regulations promulgated by the Judicial Conference and subject to the discretion and approval of the judge.... Proceedings to be recorded under this section include (1) all proceedings in criminal cases had in open court; (2) all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary; and (3) such other proceedings as a judge of the court may direct or as may be required by rule or order of court as may be requested by any party to the proceeding.

The reporter or other individual designated to produce the record shall attach his official certificate to the original shorthand notes or other original records so taken and promptly file them with the clerk who shall preserve them in the public records of the court for not less than ten years.

The reporter or other individual designated to produce the record shall transcribe and certify such parts of the record of proceedings as may be required by any rule or order of court, including all arraignments, pleas, and proceedings in connection with the imposition of sentence in criminal cases unless they have been recorded by electronic sound recording as provided in this subsection and the original records so taken have been certified by him and filed with the clerk as provided in this subsection. He shall also transcribe and certify such other parts of the record of proceedings as may be required by rule or order of court. Upon the request of any party to any proceeding which has been so recorded who has agreed to pay the fee therefor, or of a judge of the court, the reporter or other individual designated to produce the record shall promptly transcribe the original records of the requested parts of the proceedings and attach to

the transcript his official certificate, and deliver the same to the party or judge making the request.

The reporter or other designated individual shall promptly deliver to the clerk for the records of the court a certified copy of any transcript so made.

The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had. No transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record.

28 U.S.C. § 753(b).

There can be no doubt that the making of the official record of a court proceeding by a court reporter is part of the judicial function. That process is inextricably intertwined with the adjudication of claims. The official record reflects evidence taken in the case, the arguments and objections of attorneys, and the ruling of the court. The function of the official record is indispensable to the appellate process. Thus, because the tasks performed by a court reporter in furtherance of her statutory duties are functionally part and parcel of the judicial process, these actions are entitled to absolute quasi-judicial immunity. In this regard, *Mullis* and *Stewart* are unaffected by *Forrester*.[4] Ruggenberg, as a court reporter, is therefore entitled to absolute quasi-judicial immunity for actions within the scope of her authority.

### C

We must next determine whether Ruggenberg acted within the scope of her authority in failing to produce Antoine's trial transcript. Absolute immunity will not attach to judicial officers when they act "clearly and completely outside the scope of their jurisdiction." *Demoran v. Witt,*

781 F.2d 155, 158 (9th Cir.1986) (citation omitted). In *Mullis,* the court determined that quasi-judicial immunity would attach if the acts complained of were "within the general 'subject matter jurisdiction' of the [quasi-judicial officer] ...." *Mullis,* 828 F.2d at 1390 (citation omitted). "Jurisdiction should be broadly construed to effectuate the policies supporting immunity." *Ashelman v. Pope,* 793 F.2d 1072, 1076 (9th Cir.1986).

■ The Court Reporter Act requires Ruggenberg to transcribe criminal proceedings. "The reporter ... designated to produce the record *shall* transcribe and certify such parts of the record of proceedings as may be required by any rule or order of court...." 28 U.S.C. § 753(b) (emphasis added). Ruggenberg was not clearly outside of her jurisdiction in failing to complete the transcript. "Whether an act is judicial 'relate[s] to the nature of the act itself....' " *Ashelman,* 793 F.2d at 1075 (quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978)). Although Ruggenberg failed to comply with the statute or court orders, Antoine has not shown any action that was not within her responsibilities as a court reporter.

Thus, Ruggenberg is entitled to absolute quasi-judicial immunity despite the impact on Antoine's criminal appeal due to her failure to timely prepare the transcript. "Judicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.' " *Id.* at 1075 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872)).

■ Antoine argues that Ruggenberg's acceptance of the seven hundred dollar payment from him constitutes theft that would preclude absolute immunity from attaching. We disagree. The acceptance of a fee for transcribing the proceedings, al-

---

4. We reject the Eighth Circuit's reasoning in *McLallen v. Henderson,* 492 F.2d 1298 (8th Cir. 1974). In *McLallen,* the duties of a court reporter were held to be ministerial, not discretionary, and thus were not protected by quasi-judicial immunity. *McLallen,* 492 F.2d at 1299–1300.

*McLallen,* decided before *Forrester,* fails to consider the judicial function performed by the court reporter, and focuses on the discretion of the actor. We reject this approach and choose instead to focus on the nature of the function performed by the court reporter.

**1477**

though not thereafter earned, is within the jurisdiction of a court reporter and does not preclude absolute immunity. *See New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298, 1304 (9th Cir.1989) (malice or corrupt motive insufficient to deprive a judge of absolute immunity; focus on whether the precise act is a normal judicial function).

### D

A party aggrieved by the complete failure of the court reporter to discharge her responsibilities does have remedies. A trial transcript may be reconstructed pursuant to Fed.R.App.P. 10(c), and the Court of Appeals has authority to accord whatever relief might be appropriate pursuant to Fed.R.App.P. 11(b). A district court in the first instance has the power to compel the production of a transcript in the event of a simple delinquency. The final remedy would be to vacate a judgment and remand for a new trial because appellate review was not possible. *See United States v. Anzalone,* 886 F.2d 229, 232 (9th Cir.1989); *United States v. Piascik,* 559 F.2d 545, 547 (9th Cir.1977), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978).

The district court did not err in its analysis of alternative remedies. Antoine's criminal appeal was remanded for a finding of whether prejudice had occurred. This was an appropriate remedy under the circumstances of the case. Alternative remedies are available to the private litigant "and to those remedies they must, in such cases, resort." *Forrester,* 484 U.S. at 228, 108 S.Ct. at 544 (quotation omitted).

### E

Because Ruggenberg is entitled to absolute quasi-judicial immunity, the district court correctly determined that Byers & Anderson is likewise not liable to Antoine. This is so regardless of Ruggenberg's employment relation with Byers & Anderson.

### IV

Because we find that Ruggenberg was entitled to absolute quasi-judicial immunity, we need not reach the cross-appeals on the denial of summary judgment.

### V

Ruggenberg's actions as a court reporter meet the criteria for the application of the doctrine of absolute quasi-judicial immunity. The function of a court reporter is integral to the efficient operation of the judicial system and, as such, is entitled to derivative judicial immunity. Otherwise, unsuccessful litigants could bring suit against the court reporter in their efforts to redress a perceived wrong. This threat of prospective litigation would hinder the efficient and accurate transcription of judicial proceedings. The district court was correct in holding that Ruggenberg was entitled to absolute quasi-judicial immunity and therefore granting summary judgment.

AFFIRMED.