**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 1, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

STUART L. STEIN; THE STEIN
LAW FIRM, a professional law
corporation d/b/a The Stein Law Firm,

      Plaintiffs - Appellants,

    v.

THE DISCIPLINARY BOARD, OF
THE SUPREME COURT OF NEW
MEXICO; RICHARD J. PARMLEY,
JR, Chair; JAMES F. BECKLEY;
PATRICK A. CASEY; FRANKIE D.
CLEMONS; ROGER L. COPPLE;
BRUCE HERR; MICHAEL H HOSES;
ROBERT S MURRAY; MIKE G
PAULOWSKY; WILLIAM G.W.
SHOOBRIDGE; SASHA SIEMEL;
ELIZABETH E. WHITEFIELD, all
members of the disciplinary board;
Honorable PETRA MAES, Honorable
PAMELA B. MINZNER, Honorable
PATRICIO M SERNA, Honorable
RICHARD C. BOSSON, Honorable
EDWARD L. CHAVEZ, The Chief
Justice and Justices of the Supreme
Court of New Mexico; VIRGINIA L.
FERRARA; SALLY SCOTT-
MULLINS; SARAH KARNI,
Disciplinary Counsel & Assistant
Disciplinary Counsel,

      Defendants - Appellees.

No. 06-2188

Stuart L. Stein, The Stein Law Firm, Albuquerque, New Mexico, for Plaintiffs - Appellants.

Jerry A. Walz, Walz & Associates, Cedar Crest, New Mexico, for Defendants - Appellees.

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

**HARTZ**, Circuit Judge.

This is the latest episode in the battle between attorney Stuart Stein and the Disciplinary Board of the Supreme Court of New Mexico (the Board). Mr. Stein and the Stein Law Firm (Plaintiffs) have apparently won a long struggle over the application of state disciplinary rules to their advertising, but Mr. Stein has lost a separate disciplinary matter regarding his representation of a client. Now before us is the appeal from dismissal of a civil suit filed by Plaintiffs in the United States District Court for the District of New Mexico, a suit that arose from both sets of proceedings. Plaintiffs' claims in the suit expanded considerably over time. This appeal concerns only certain claims against the Board's Chief Disciplinary Counsel, Virginia Ferrara; two Deputy Assistant Disciplinary Counsel, Sally Scott-Mullins and Sarah Karni; and the New Mexico Supreme

Court itself. These claims allege that Plaintiffs' constitutional rights were violated (1) by Ms. Ferrara, when she (a) did not serve them with a copy of the opinion by a Board hearing committee in the advertising matter that it could not issue a declaratory judgment, (b) provided the Supreme Court with a copy of the hearing committee's opinion, and (c) requested the Supreme Court to appoint a special review committee to review the opinion; (2) by Ms. Ferrara, Ms. Scott-Mullins, and Ms. Karni in pursuing disciplinary charges regarding Mr. Stein's representation of a former client when they had inadequately investigated the allegations; and (3) by the Supreme Court when it issued a show-cause order and later rejected the hearing committee's opinion on declaratory judgments. The district court dismissed all the claims on the grounds of absolute immunity. We affirm the dismissal. We hold that Ms. Ferrara's actions in the advertising matter did not infringe any constitutionally protected interest of Plaintiffs and that all other actions of the defendants were absolutely privileged.

## I.   BACKGROUND

The events leading to Plaintiffs' current litigation began in June 2002 when the Board threatened Mr. Stein with disciplinary action if he did not modify his legal advertisements to comport with the New Mexico Rules of Professional Conduct.  Mr. Stein protested that the advertising restrictions were unconstitutional.  Plaintiffs claim that Mr. Stein informed the Board's disciplinary counsel that the Legal Advertising Committee was applying the rules in an

unconstitutional fashion and that despite being aware of United States Supreme Court precedent on the matter, disciplinary counsel ignored his protests.

In July 2002 Plaintiffs filed their first suit in federal court, requesting, among other relief, an injunction to prevent the Board from acting against Mr. Stein with respect to the advertising. The district court held that *Younger v. Harris*, 401 U.S. 37 (1971), required it to abstain from hearing the case because the state disciplinary proceeding was ongoing. It dismissed the case without prejudice, noting that Mr. Stein would have an opportunity to raise his constitutional claims in the state proceeding. *See Stein v. Legal Adver. Comm. of the Disciplinary Bd.*, 272 F. Supp. 2d 1260, 1274–75 (D.N.M. 2003) (*Stein I*). Two later federal cases brought by Plaintiffs within the next year on the same grounds reached the same result. *See Stein v. Legal Adver. Comm. of the Disciplinary Bd.*, 304 F. Supp. 2d 1274, 1276 (D.N.M. 2003) (*Stein II*); *Stein v. Legal Adver. Comm. of the Disciplinary Bd.*, No . CIV 03-631 LFG/RHS, 2003 U.S. Dist. LEXIS 24394 (D.N.M. June 17, 2003) (unpublished) (*Stein III*).

In October 2002, while *Stein I* was pending, the Board filed formal charges against Mr. Stein relating to his advertising. In May 2003 he brought his constitutional challenges in a petition to the Board for a declaratory judgment. That November the Board appointed a hearing committee chaired by Norman Thayer (the Thayer Committee) to consider the declaratory-judgment petition. While the Thayer Committee was considering the petition, the disciplinary

charges were stayed.  When the Thayer Committee had not reached a decision by December 30, 2003, Mr. Stein moved the committee for judgment, contending that the Legal Advertising Committee had defaulted.  Plaintiffs claim that the Thayer Committee never responded.

Meanwhile, in July 2003 the Board had filed a second set of 21 allegations against Mr. Stein, apparently arising out of his representation of a client.  A year later a Board hearing committee found four violations of ethical requirements.  The New Mexico Supreme Court imposed sanctions on Mr. Stein in September 2005.

On July 26, 2004, Plaintiffs filed the current lawsuit (*Stein IV*) in federal district court.  The original complaint contended that Plaintiffs' free-speech rights were violated by a state rule protecting the confidentiality of disciplinary proceedings.  This state rule is not at issue on appeal.

On August 27, 2004, Mr. Stein renewed his motion before the Thayer Committee for a default judgment on his declaratory-judgment petition.  In a letter dated September 3, 2004, Ms. Ferrara disclosed to Mr. Stein and the attorney for the Legal Advertising Committee that the Thayer Committee had already filed its opinion (which said that the Committee had no authority to issue declaratory judgments).  She also informed them that the New Mexico Supreme Court had been requested to appoint a special panel to review the opinion.  Ms. Ferrara's letter apologized for the oversight in not providing the attorneys

with copies of the opinion. But in a letter dated September 8, she explained to Mr. Stein that the parties had not been provided with copies because findings are generally distributed to the parties when the Board Chair announces which Board members will serve as a panel to review the committee's opinion, and no panel had yet been designated. In that letter she also wrote that the reason for requesting a special review panel composed of persons not members of the Board was that Plaintiffs were suing the Board.

At the time that Mr. Stein learned of the Thayer Committee's opinion, Plaintiffs' appeal in their third federal case, *Stein III*, was pending before this court. The district court had dismissed the case after finding that the conditions requiring *Younger* abstention continued to be met. *See Stein III*, 2003 U.S. Dist. LEXIS 24394. On October 20, 2004, one month before the scheduled oral argument, the New Mexico Supreme Court *sua sponte* ordered the Plaintiffs and the Legal Advertising Committee to show cause why the court should not (1) reject the Thayer Committee's opinion that it did not have jurisdiction to consider a declaratory action and (2) remand the matter to the Board. On October 26, 2004, the Supreme Court ruled that the Board did have the authority to consider a declaratory action and sent the case back to the Board.

In this court's December 22, 2004, decision in the *Stein III* appeal, we took judicial notice of the October 26 order of the New Mexico Supreme Court and upheld the district court's dismissal of the case. *See Stein v. Legal Advertising*

-6-

*Comm. of Disciplinary Bd.,* 122 Fed. App'x 954 (10th Cir. 2004) (unpublished).

We explained: "The State of New Mexico is attempting to provide Mr. Stein with a forum to present his federal challenges to New Mexico's attorney advertising rules. . . . [T]he proceedings continue to meet the conditions that require a *Younger* abstention." *Id.* at 957.

On January 18, 2005, the Plaintiffs filed an amended complaint in this action, including, in addition to its previous challenge to the state confidentiality rule, new claims under 42 U.S.C. § 1983 arising from (1) disciplinary counsel's handling of the Thayer Committee opinion and the October 2002 and July 2003 charges and (2) the Supreme Court's issuance of the show-cause order and rejection of the Thayer Committee opinion. Count III of the complaint alleges that Ms. Ferrara acted in violation of Plaintiffs' rights in not timely serving Mr. Stein with the Thayer Committee's opinion and by contacting the Supreme Court ex parte to request a special committee to review that opinion. It also alleges that she wrongfully supplied the Supreme Court with a copy of the Thayer Committee opinion. Count IV alleges various improprieties in the handling of the July 2003 charges, including that the ethical charges were baseless and filed against Mr. Stein in retaliation for Plaintiffs' federal lawsuit, that Ms. Scott-Mullins and Ms. Karni failed to investigate adequately the accusations of Mr. Stein's ethical violations, that they failed to provide him with proper notice of the charges, that they failed to produce discovery when required to do so, and

that they failed to take action when they realized that one of their witnesses had lied to keep information from Plaintiffs. The count also alleges that Ms. Scott-Mullins, Ms. Karni, and Ms. Virginia Ferrara became overly friendly with the complainant. Ms. Ferrara, it contends, approved the actions of Ms. Scott-Mullins and Ms. Karni and did not adequately supervise them or respond to complaints about their conduct. And Count V alleges that the Supreme Court's issuance of the show-cause order and its rejection of the Thayer Committee opinion were without jurisdiction and in violation of Plaintiffs' due-process and equal-protection rights.

Defendants moved for dismissal or summary judgment. Among their contentions were that the state-rule challenges were not ripe for adjudication; that the allegations against Ms. Ferrara regarding her handling of the Thayer Committee opinion failed to state a constitutional claim and she was entitled to qualified immunity; that disciplinary counsel were entitled to absolute prosecutorial immunity for their actions regarding the July 2003 charges; and that the Justices of the New Mexico Supreme Court were entitled to judicial immunity for their issuance of the show-cause order and the opinion rejecting the Thayer Committee opinion. Plaintiffs responded to these arguments on the merits; they also moved for limited discovery and for leave to amend their complaint thereafter.

The district court dismissed the claims challenging the state rule, agreeing that they did not present a case or controversy. It granted summary judgment on the § 1983 claims, holding that they were barred by absolute prosecutorial and judicial immunity. The court also denied the Plaintiffs' motions for limited discovery and for leave to amend on the grounds that no rule entitles a party to discovery for the purpose of amending a complaint, that the claims the Plaintiffs sought to add were "distinct in time, parties, and relevance" from the complaint before the court, Joint App. Vol. 4 at 851, and that the Plaintiffs had failed to comply with a local rule requiring the proposed amendment to accompany the motion to amend.

## II.    DISCUSSION

Plaintiffs appeal the grant of summary judgment on their § 1983 claims but do not challenge the dismissal of the claims regarding the state confidentiality rule. We review the district court's grant of summary judgment de novo, applying the same standard that applies in district court. *See Allstate Ins. Co. v. Murray Motor Imports Co.*, 357 F.3d 1135, 1138 (10th Cir. 2004). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)).

The conclusion of Plaintiffs' opening brief also requests that we order the district court to permit limited discovery and an amended complaint, but the brief fails to present any argument on these issues, so we decline to address them. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (arguments inadequately briefed are waived).

### A.  Absolute Immunity

The district court held that all defendants were absolutely immune from suit under § 1983.  "The Supreme Court has recognized the defense of absolute immunity from civil rights suits in several well-established contexts involving the judicial process." *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990).  As we have explained:

> The rationale for [this defense] is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation.  Because the judicial system often resolves disputes that the parties cannot, the system portends conflict.  Win or lose, a party may seek to litigate the constitutionality of circumstances which required him to endure a lawsuit or suffer defeat.  Such suits by dissatisfied parties might target judges, prosecutors and witnesses.  Though such suits might be satisfying personally for a plaintiff, they could jeopardize the judicial system's ability to function.

*Id*. at 686–87. (footnote and citations omitted).  Typically, judges, prosecutors, and witnesses enjoy absolute immunity.  *See id*. at 686; *Valdez v. City and County of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989).  But such immunity is not always available to them.  The Supreme Court has adopted a functional approach:

-10-

that is, "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).

## B. Specific Claims

### 1. Handling by Counsel of Thayer Committee Decision

Count III alleges that Chief Disciplinary Counsel Ferrara violated Plaintiffs' due-process rights under the Fourteenth Amendment when (1) she did not timely serve a copy of the Thayer Committee opinion on Plaintiffs and opposing counsel, and (2) she improperly contacted the New Mexico Supreme Court by supplying it with a written copy of the Thayer Committee opinion and requesting the appointment of a special committee of persons who were not members of the Board to review that opinion. The district court held that Ms. Ferrara was protected against these claims by prosecutorial immunity. We understand Plaintiffs to be arguing that Ms. Ferrara is entitled only to qualified immunity, rather than absolute immunity, because her acts were "administrative" in nature.

In addition to investigating and prosecuting disciplinary actions, counsel for the Board perform administrative functions. The New Mexico Supreme Court has charged disciplinary counsel with "maintain[ing] permanent records of all matters processed and the disposition thereof, and [acting] as the general administrative officer for the Disciplinary Board under its direction and

-11-

supervision." Rule 17-105(C)(3). Vesting this mix of functions in one person can obscure the line between acts taken by the Chief Disciplinary Counsel as a prosecutor and acts taken by the Chief Disciplinary Counsel as an administrator. But prosecutorial immunity applies only to actions taken by a prosecutor in the role of advocate. *See, e.g.*, *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997). In our view, the allegations against Ms. Ferrara in Count III do not emanate from her role as an advocate. We now proceed to explain why, beginning with a brief description of the New Mexico attorney-discipline procedures.

Under the New Mexico disciplinary rules, formal hearings are conducted by a hearing committee appointed by the Board. *See* Rules 17-104(A) (appointment of a hearing committee), 17-313 (hearings). After conducting the hearing, the committee issues findings of fact, conclusions, and a recommended disposition, which it transmits to the Board. *See id.* 17-313(D)(8). The Board chairman is then to transmit copies of the committee's opinion to disciplinary counsel, the respondent, and respondent's counsel. *See id.* Before rendering its decision, the Board (or a panel of Board members) may permit briefing and oral argument, but will not consider evidence other than what is in the hearing committee's record. *See id.* 17-314, 17-315. The Board's decision is subject to review by the state supreme court. *See id.* 17-316.

Turning first to Ms. Ferrara's failure to notify Mr. Stein of the hearing committee's opinion, the rules provide that the method of transmission is from the

-12-

hearing committee to the Board chairman to the respondent (Mr. Stein). If Ms. Ferrara was to assist in that transmission, it would not be as a party to the proceeding; after all, the chief disciplinary counsel is to be notified by the Board chair at the same time as the respondent is notified. *See id*. 17-313(D)(8). Rather, her involvement in any notification would be as an accommodation to the Board and the hearing committee. Such involvement should be treated as action in her capacity as administrator for the Board.

We reach the same conclusion as to Ms. Ferrara's notifying the Supreme Court of the hearing committee's opinion so that it could appoint a panel as an alternative to a panel of Board members. This was not the action of a party seeking relief from a higher authority. She was not appealing the committee's opinion. The opinion by itself has no effect. It is a report and a recommendation, akin to a report and recommendation to a federal district court from a magistrate judge. The actual decision must be made by a panel of Board members. Ordinarily, selection of the panel would be the duty of the Board chair. *See id*. 17-314(A). But with all Board members apparently disqualified by Mr. Stein's suit against the Board, Ms. Ferrara had to notify the state supreme court of the need for special action. Her notification to that court was, again, an act in her capacity as administrator for the Board, not as an advocate. That the New Mexico Supreme Court proceeded to take the matter itself, rather than appoint a special panel of non-Board members, was not the consequence of her appealing a Board

-13-

decision to the court (which could well be characterized as part of her prosecutorial duties). She filed no such appeal.

In short, as Ms. Ferrara acknowledges, the duties at issue in Count III "are not of the type generally assigned to criminal prosecutors." Aplee Br. at 21. We characterize her acts as administrative functions, and therefore they are not entitled to prosecutorial immunity.

Ms. Ferrara contends that an alternate ground for absolute immunity applies because she was acting as a clerk of court when she undertook the challenged actions. There is a substantial question, however, whether the doctrine of absolute immunity extends so far. As stated by the Supreme Court, "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 n.4 (1993) (internal quotation marks omitted) (rejecting absolute immunity for court reporters). Absolute immunity is not available simply because one's work is "'functionally part and parcel of the judicial process.'" *id*. at 432 (quoting *Antoine v. Byers & Andrews, Inc.*, 950 F.2d 1471, 1476 (9th Cir. 1991)). Thus, in *Henriksen v. Bentley*, 644 F.2d 852, 856 (10th Cir. 1981), we stated that court clerks are generally entitled only to qualified immunity. To be sure, we also stated that court clerks may be entitled to absolute immunity in some circumstances, but we recognized only two. First, absolute immunity may be available to protect clerks performing quasijudicial

duties, such as setting bail. *See id*. at 855. Second, it may protect clerks "acting under the command of a court decree or explicit instructions from a judge." *Id*.

Ms. Ferrara contends that our decision in *Whitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000), supports absolute immunity for her conduct. She cites it for the proposition that when a nonjudicial officer's duties have "an integral relationship with the judicial process," absolute quasijudicial immunity applies. Aplee. Br. at 21. But that statement of the scope of absolute immunity appears inconsistent with the Supreme Court's opinion in *Antoine*. And one could easily read *Whitesel* more narrowly, as protecting only quasijudicial acts. In *Whitesel* the plaintiff sued several pretrial service officers who had prepared a temporary restraining order (TRO) against him after he was charged with assault and child abuse. *See id.* at 863–64. By state statute the TROs had to contain certain restrictions; other restrictions were discretionary. *See id.* Contrary to the statute, the officers issued a TRO containing some of the discretionary provisions before the court gave the accused a hearing on those provisions. *See id.* We concluded that "as a matter of law, these are judicial acts integral to the judicial process and therefore are cloaked in absolute immunity." *Id.* at 868. Ms. Ferrara's reading overlooks the language: "these are judicial acts." Issuing a TRO was indisputably a judicial act; the TRO authoritatively adjudicated private rights.

There remains the possibility of recognition of absolute immunity for a clerk "acting under the command of a court decree or explicit instructions from a

-15-

judge." *Henriksen*, 644 F.2d at 856.  But Ms. Ferrara has not pointed to any directive, order, or even a rule, under which she was acting.

In any event, we leave to another day any determination of the precise boundaries of absolute quasijudicial immunity for clerks.  We need not resolve whether such immunity would protect Ms. Ferrara against the claims here because Plaintiffs have not stated any constitutional violation.  Although the district court did not decide the matter on this ground, Ms. Ferrara raised the absence of a constitutional violation in the motion for summary judgment, and Plaintiffs responded to this argument.  It is therefore fair to address this argument now.  *See Rogers v. Anheuser-Busch, Inc.*, 491 F.3d 1165, 1169 (10th Cir. 2007).

The Fourteenth Amendment to our Constitution declares that no State shall "deprive any person of life, liberty, or property without due process of law."  To state a violation of this amendment, Plaintiffs must identify a liberty or property interest of which they were deprived.  In their response to the motion for summary judgment, the only interest that they identified as such was "a vested interest and confidence that the rules of procedure would be followed."  Joint App. Vol. 2 at 374.  But "[p]rocess is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  Hence, "an entitlement to nothing but procedure cannot be the basis for a [liberty or]

property interest." *Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) (internal quotation marks omitted).

Nor does Plaintiffs' response to the motion for summary judgment even *mention* any other protected interest that was infringed. The response asserts that had Ms. Ferrara not requested a special panel to review the Thayer Committee opinion and forwarded a copy of that opinion to the New Mexico Supreme Court, that court would not have issued its October 26 order rejecting the Thayer Committee opinion. In a footnote the response speculates that if the court had not issued that order, this court would have resolved the *Stein III* appeal in their favor. Presumably, Plaintiffs believe that if the New Mexico Supreme Court had not determined that the Thayer Committee had jurisdiction to hear their declaratory-judgment petition, the grounds for *Younger* abstention would have been negated. This is a dubious assumption, given that the Thayer Committee apparently told Mr. Stein that he could raise his constitutional objections in a motion to dismiss or as an affirmative defense in his answer to the charges. *See Stein III* appeal, 122 Fed. App'x at 956.

But more importantly, no property interest of Plaintiffs was injured by Ms. Ferrara's alleged procedural error in communicating with the state court. Plaintiffs do not suggest that Ms. Ferrara's actions influenced the substance of the Supreme Court's decision—that is, its ruling that the Thayer Committee could hear a declaratory-judgment action. Their complaint in essence is only that the

-17-

effect of her actions was to advance the time in which the court would issue its ruling. Plaintiffs' interest in a court's declaration of law being delayed (or even never being made) is not, however, an interest protected by the Fourteenth Amendment. "An individual has a property interest in a benefit for purposes of due process protection only if he has a 'legitimate claim of entitlement' to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.'" *Teigen*, 511 F.3d at 1078–79 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). We refuse to recognize an entitlement to a more tardy announcement of applicable law. After all, a party in one case can hardly preclude the court from declaring the applicable law in a different case. When Ms. Ferrara set in motion events that led to the New Mexico Supreme Court's decision, she deprived Plaintiffs of nothing to which they were legitimately entitled. We therefore affirm the dismissal of Count III.

### 2. Prosecution of October 2002 and July 2003 Charges

Count IV alleges that Ms. Ferrara and Ms. Scott-Mullins used a state rule that they knew to be unconstitutional to bring charges against Mr. Stein in the October 2002 advertising case. It also alleges that Ms. Ferrara, Ms. Scott-Mullins, and Ms. Karni brought baseless ethical charges against him in July 2003 and engaged in several forms of prosecutorial misconduct, including becoming overly friendly with the complainant, failing to produce required discovery, and allowing a witness to lie.

Prosecutors are absolutely immune from civil liability for damages for "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). One such protected act is the decision to prosecute. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). In *Clulow v. Oklahoma*, 700 F.2d 1291, 1298 (10th Cir. 1983), this court said that prosecutorial immunity extends to "bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline."

We agree with the district court that *Clulow*'s language indicating that absolute immunity extends to disciplinary officials' investigative functions appears to conflict with later Supreme Court precedent that grants only qualified immunity to the investigative activities of prosecutors. *See Burns v. Reed*, 500 U.S. 478, 495 (1991) ("Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive."). Indeed, this inconsistency is the sole basis of Plaintiffs' appeal of the district court's dismissal of this count: Plaintiffs challenge the dismissal only to the extent that any of the underlying activities should be characterized as investigative activities. We note that *Clulow* involved no allegations of investigative misconduct, but we need not consider

-19-

whether *Clulow*'s dictum regarding investigations must be modified, because none of the actions of which Plaintiffs complain can be properly characterized as the exercise of investigative, as opposed to prosecutorial, functions.

Only two allegations of the complaint mention the investigation of the charges against Mr. Stein. The first is that Ms. Scott-Mullins and Ms. Karni "filed an unsupported ethical complaint . . . without adequate investigation . . . for the purposes of destroying the practice of Plaintiffs without adequate basis." Joint App. Vol. 2 at 321. We hold that absolute immunity protected the defendants on this claim. Deciding whether to bring charges—which necessarily includes an evaluation of whether there has been sufficient investigation to support charges—is a quintessential prosecutorial function protected by absolute immunity. *See Buckley*, 509 U.S. at 273 (prosecutorial immunity extends to the prosecutor's evaluation of evidence assembled by investigators). If the prosecutor does not believe that the investigation has been adequate to support bringing charges, she can simply refrain from doing so. To be sure, an investigator may distort the prosecutor's exercise of discretion by falsifying information given to the prosecutor or by concealing from the prosecutor evidence already obtained or the availability of potential evidence. But Plaintiffs have made no allegation that the disciplinary counsel in their investigative capacities committed any act that would prevent them, in their prosecutorial capacities, from making a fully informed decision about whether the evidence

already obtained was adequate to justify bringing charges. In this circumstance, any failure-to-investigate claim against disciplinary counsel amounts to a claim that they should not have exercised their discretion to bring charges without obtaining more information. Against such a claim, counsel are protected by absolute immunity. Allowing Plaintiffs to frame a grievance about the filing of unfounded charges as a claim for misconduct in investigation would improperly expose prosecutors to litigation concerning their exercise of discretion to prosecute.

The complaint's second allegation involving investigation is that "during the litigation stage of the . . . ethical charges," Defendants Scott-Mullins and Karni "fail[ed] to do a proper investigation by making a conscience [sic] decision not to contact . . . a key witness for Plaintiffs" until shortly before trial. Joint App. Vol. 2 at 322. It is settled law, however, that actions taken by the prosecutor in preparation for trial in the role of advocate are protected by absolute immunity. *See Buckley*, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."). A decision regarding when during the course of litigation to contact an adverse witness is a prosecutorial, not an investigative, decision. It is therefore protected by absolute immunity. Moreover, Plaintiffs

-21-

fail to specify how they were harmed by the decision not to contact their witness until shortly before the hearing. Accordingly, Count IV was properly dismissed.

### 3. Claim Against Supreme Court

Count V alleges that the Justices of the Supreme Court of New Mexico violated Plaintiffs' due-process and equal-protection rights when the court issued its October 2004 show-cause order and the later decision holding that the Disciplinary Committee had jurisdiction to consider a declaratory-judgment action. We reject this claim, as did the district court, because the Justices are protected by absolute judicial immunity.

The Supreme Court of the United States has long held that judges are generally immune from suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1978). There are only two exceptions to this rule: (1) when the act is "not taken in [the judge's] judicial capacity," and (2) when the act, "though judicial in nature, [is] taken in the complete absence of all jurisdiction." *Id.* at 12. Regarding the second exception, an act taken in excess of a court's jurisdiction is not to be confused with an act taken in the "complete absence of all jurisdiction." As *Bradley v. Fisher*, 80 U.S. 335, 351–52 (1871), explained,

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as

-22-

any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

To illustrate this distinction, the Supreme Court has stated:

[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978) (citing *Bradley*, 80 U.S. at 352).

There can be no question that the state supreme court's allegedly unconstitutional acts—the issuance of the show-cause order and the remand to the Disciplinary Board —were taken in a judicial capacity.  As stated in *Clulow*, "even informal attorney disciplinary matters presented to the states' highest courts are judicial proceedings."  700 F.2d at 1298.  Thus, the first exception to judicial immunity is not at issue.  Rather, Plaintiffs invoke the second exception, arguing that the acts were taken in the complete absence of all jurisdiction. Plaintiffs insist that the New Mexico Supreme Court, as a court of limited and appellate jurisdiction, was clearly without jurisdiction to issue the orders because no party had "invoked" the jurisdiction of the court.

We disagree.  The New Mexico Supreme Court has jurisdiction over the subject matter of attorney discipline.  First, the New Mexico Constitution endows

-23-

the Supreme Court of New Mexico with "superintending control over all inferior courts" in the state.  N.M. Const. art. VI, § 3.  The New Mexico Supreme Court has held that authority over attorney discipline is encompassed within this power. *See In re Treinen*, 131 P.3d 1282, 1284 (N.M. 2006).  In addition, New Mexico Statutes Annotated § 36-2-1, titled "Authority of supreme court to regulate practice of law," provides that "[t]he supreme court of the state of New Mexico shall, by rules promulgated from time to time, define and regulate the practice of law within the state of New Mexico."  Under *Bradley* a court invested with jurisdiction over the subject matter in question does not act in the clear absence of all jurisdiction.

Moreover, the Board itself is an agency of the state supreme court, established by that court, *see* Rule 17-101, and its decisions are subject to review by the supreme court, *see id.* 17-316.  In this case, the Thayer Committee opinion, which was only a report and recommendation, apparently could not be reviewed by a Board panel because all Board members were disqualified.  Therefore, the supreme court needed to take action to resolve the problem.  Rather than take the extraordinary step of appointing a special panel, it decided to hear the dispute itself.  Nothing in the disciplinary rules divests that court of this inherent authority.

These provisions of state law establish that the Justices of the Supreme Court of New Mexico did not act in the clear absence of jurisdiction in issuing the show-cause order.  They are therefore protected by absolute judicial immunity.

## III.  CONCLUSION

We AFFIRM the judgment of the district court.